Durant *v.* Bacot.

---

DURANT *vs*, BACOT.

Where a mistake has occurred in the sale of lands there is no doubt of the power of a court of equity to reform the conveyance.

But when a deed is drawn strictly in accordance with the intention of the parties, although from a mistake in judgment it will not effect the end in view, there is no case presented for the interference of the court.

---

*Weart* and *Bradley*, for complainant.

*Zabriskie*, for defendant.

THE CHANCELLOR. On the 19th of June, 1827, John Van Vorst, by deed of that date, conveyed to William Durant a lot of salt meadow, 50 feet in front and rear, and 100 feet deep, at the intersection of Warren street with the turnpike road leading from Newark to Jersey

City.  The lot is described as " beginning at the north side of the turnpike road where Warren street, in the map of the Jersey Company, would intersect said road, and extending thence west along the turnpike fifty feet, and north, and parallel with Warren street, one hundred feet."  In the year 1830, a second deed was executed by Van Vorst to Durant for another lot, triangular in form, adjoining the first named lot on the west, fronting twenty-six feet on the turnpike, and running to the corner of the first lot in the rear.

In November, 1857, the complainant, in whom the title to both lots is vested, filed his bill against the heirs of Van Vorst to reform the deed of 1830.  It charges that the real design of the parties in making the second conveyance was to make the west line of the lot strike the turnpike at right angles; that from a misapprehension at the time of the conveyance, the parties supposed that a front of 26 feet on the turnpike would accomplish that end, whereas it required an additional front of 55 feet on the turnpike to accomplish that purpose.  It asks that the deed be reformed so as to effectuate the intention of the parties, and that the defendants be decreed to convey an additional front of 29 feet on the turnpike.

Of the power of the court to reform the contract there is no question. 1 *Spence's Eq. Jur.* 633; *Adams' Eq.* 168; 1 *Sugden on Ven.* 158; 1 *Story's Eq.* § 152; *Chetwood* v. *Brittan,* 1 *Green's Ch.* 438; *McKelway* v. *Armour,* 2 *Stockt.* 115.

Does the complainant, by his evidence, show a case which calls for or authorizes the interference of the court? If so, is the remedy lost by lapse of time ?

The bill charges that the original deed of 1827 was made under the impression that Warren street intersected the turnpike at right angles, and that the deed was intended to convey a rectangular lot; that contrary to such impression, it was found that the roads intersected each other at an acute angle, and that the lines of the lot

were consequently so oblique that a house erected on the entire front of the lot, with its side lines at right angles to the road, would unavoidably project upon the adjoining lands of the grantor, and that the buildings of the grantee had by mistake been erected in part on the lands of the grantor.

To remedy this difficulty, and with the view of making the western line of the lot perpendicular to the road, the bill alleges that the second deed was executed, but that the deed, as drawn and executed, does not accomplish the object and intention of the parties. This view of the case is not sustained by the evidence. The angle formed by the intersection of the street being an acute angle, it is obvious that if the grantee occupied the entire front with his building, and extended it in the rear at right angles to the street, the rear of the building would not occupy the land of Van Vorst on the west line, but would encroach upon Warren street on the east line. To avoid this difficulty, or possibly from a mere mistake of location, Durant located his buildings too far west, so that the front of his building upon the turnpike was 26 feet west of his true line and upon the land of Van Vorst. It became necessary, therefore, for him to protect his building to acquire more front upon the turnpike, and it seems most probable that this was the real design of the second purchase. The difficulty doubtless arose from the lot not being square, but the primary design of the change was not so much to make the lines rectangular as to acquire title to the ground occupied by the buildings. This I deem a fair result of the evidence in the case. So far from the design of the second conveyance being to make the line of the lot rectangular with the street, it is obviously drawn upon the assumption that the west line of the original lot was at right angles to the street, and that the additional purchase made the west line oblique. It is for a half lot, beginning on the turnpike twenty-six feet from the west line of Durant's lot, as formerly con-

veyed, running thence (not at right angles) but "diago-nally, to the rear of said lot, forming a triangle, the base of which, lying along the line of said Charles' lot, is one hundred feet deep from said turnpike road, and the per-pendicular along said road twenty-six feet." Now every phrase and expression in that description is applicable, and only applicable, to a lot whose east line, being iden-tical with the west line of the old lot, is at right angles to the street, and whose west line is oblique. Every ex-pression is repugnant to the idea of squaring the lot by making the west line intersect the street at right angles.

But assuming that the real and sole design of the se-cond purchase was to make the lot rectangular, let us see how the case stands upon the evidence. John J. Durant says the lot turned out not to be square; Van Vorst was willing to make it square; my father was anxious to have it square; Mr. Van Vorst said he would sell enough to make it square; my father said he would buy enough to make it square. Mr. Cassedy, the counsel under whose direction the deed was drawn, says, I drew the deed from the orders I got from them; we all three believed, as I now recollect, that *that* would make the western line of the lot at right angles with the turnpike; I recollect Van Vorst asked how many feet it would take to square it; Durant said about 26 feet, the number of feet in the deed. And on cross-examination, he says—"Durant said it would take 26 feet along the turnpike to square it out; I think both parties said *that* would square it; I think Van Vorst said, "how much do you want?" Durant said "26 feet;" I think that will square it out; when I say 26 feet, I don't mean to say that I recollect that he said those words, but I mean to say he called for the quantity named in the deed. Now it is evident from this testi-mony that there is no mistake in drawing the deed. It was drawn strictly in accordance with instructions given. Durant wanted 26 feet; Van Vorst agreed to sell 26 feet; he received pay for 26 feet; he actually conveyed 26 feet.

There is no mistake in the deed, and no room for the reformation of this instrument. The whole mistake was in the judgment of the parties, or of Mr. Durant himself, as to the effect of the purchase upon the shape of his lot. It is clearly not a case for the interference of the court.

The bill must be dismissed.